**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

| | | |
|---|---|---|
| IXONIA BANK d/b/a NOVUS HOME MORTGAGE, | ) ) ) | |
| *Plaintiff,* | ) ) | CIVIL ACTION FILE NO. |
| v. | ) ) | 1:25-cv-00516 |
| TEXANA BANK NA, SCOTT SAX, and MICHAEL COLLINS, | ) ) ) | **JURY TRIAL DEMANDED** |
| *Defendants* | ) ) | |
| SCOTT SAX and MICHAEL COLLINS, | ) ) | |
| *Counterclaim Plaintiffs,* | ) ) | |
| v. | ) ) | |
| IXONIA BANK d/b/a NOVUS HOME MORTGAGE and ERIC EGENHOEFER, | ) ) ) | |
| *Counterclaim Defendants* | ) ) | |

## <u>DEFENDANTS' ANSWER TO PLAINTIFF'S COMPLAINT</u>

Defendants Texana Bank NA ("Texana Bank"), Scott Sax ("Sax"), and Michael Collins ("Collins") (collectively referred to as "Defendants"), by and through their undersigned counsel, hereby file this Answer and Separate Defenses to Plaintiff's Complaint. Defendants respond to the Paragraphs in Plaintiffs' Complaint as follows:

1.    How can a business protect itself from the bad actions of unscrupulous employees and competitors? What should a business do when a senior executive develops a scheme with a competitor to steal its employees, data, and customers? Why is it so hard for some business owners to adhere to standards of ethics and good faith practices?

1

**RESPONSE:** The allegations in Paragraph 1 of Plaintiff's complaint are rhetorical questions to which no response is required. To the extent a response is required, Defendants deny the allegations contained in Paragraph 1 of Plaintiff's Complaint and state further that Plaintiff should ask the final question to itself in light of the facts set forth in Defendants' counterclaims.

2.      Plaintiff Novus Home Mortgage hoped to never have to answer these questions. Yet two of its former senior executives, Defendants Scott Sax and Michael Collins, working in close collaboration with Defendant Texana Bank NA, designed and executed a plan to "lift out" Novus's Denver-based retail mortgage lending operation for their benefit. Defendants stole Novus's employees, customers, data, and goodwill, resulting in unfair competition and unjust enrichment.

**RESPONSE:** Defendants are without knowledge sufficient to admit or deny the allegations in Paragraph 2 regarding Plaintiff's state of mind. Defendants deny the remaining allegations contained in Paragraph 2 of Plaintiff's Complaint.

3.      Defendants' actions were intentional and unlawful. By no later than December 2024, Sax and Collins had decided to leave Novus for Texana. Instead of notifying Novus, they actively solicited approximately two dozen other employees to join them while simultaneously breaching their agreements with Novus. For example, for at least one month but perhaps longer, they and their team remained employed by Novus while working on Texana's behalf and against Novus's interests. As discussed below, they took incoming customers and business opportunities and immediately passed them along to Texana. Further, they removed confidential business information from Novus for their use at Texana, with Texana's knowledge and active participation.

**RESPONSE:** Defendants deny the allegations contained in Paragraph 3 of Plaintiff's Complaint.

4.      After Novus started asking questions, Sax and Collins finally admitted to Novus on January 3, 2025 that they planned to leave Novus for Texana and take 23 employees with them. In that conversation, they lied to Novus and claimed they had not transferred any loan files from Novus to Texana and that they had not transferred any information to themselves.

**RESPONSE:** Defendants deny the allegations contained in Paragraph 4 of Plaintiff's Complaint.

5.      After their termination, Sax and Collins attempted to trespass upon their former office space, aggressively demanding that the building's management and cleaning staff allow them in Novus's office despite no longer working for Novus and despite having engaged in numerous unlawful and damaging actions against Novus. Sax and Collins also claimed that Texana would assume Novus's sublease so long as they could "inspect" the office first. But, on information and belief, this too was just a ruse to access the office and take more information and assets belonging to Novus for use at Texana.

**RESPONSE:** Defendants deny the allegations contained in Paragraph 5 of Plaintiff's Complaint.

6.      Their motivations became clear once Novus began clearing out the office.  That space—paid for by Novus—had long since ceased to be an office where work was done for Novus's benefit. It was instead strewn with Texana documents and printouts of emails from Texana's loan processors showing that, contrary to Sax and Collins's representations to Novus, they and their team had been working diligently to shuttle every business opportunity away from Novus and to Texana with Texana's active participation in the unlawful scheme. And Sax, Collins, and the staff they supervised and solicited to leave Novus had removed equipment and begun boxing up items, clearly anticipating a move well before they notified Novus.

**RESPONSE:** Defendants deny the allegations contained in Paragraph 6 of Plaintiff's Complaint.

7.    Defendants' conduct was not only unethical, it was also illegal and has caused Novus millions of dollars in losses. Through this action, Novus seeks relief from Texana, Sax, and Collins for the damage they inflicted on Novus and the value they wrongly stole for themselves.

**RESPONSE:** Defendants deny the allegations contained in Paragraph 7 of Plaintiff's Complaint.

**PARTIES**

8.    Plaintiff Ixonia Bank is a Wisconsin state-chartered bank with its principal place of business in Wisconsin. Novus Home Mortgage is a division of Ixonia Bank and is a nationwide mortgage lender.

**RESPONSE:** Defendants admit the allegations contained in Paragraph 8 of Plaintiff's Complaint.

9.    Defendant Texana Bank NA is a nationally chartered bank with its principal place of business in Texas. Texana Bank offers mortgage lending services, now including in Denver, Colorado.

 **RESPONSE:** Defendants admit the allegations contained in Paragraph 9 of Plaintiff's Complaint.

10.    From approximately May 2024 to January 2025, Defendant Scott Sax was employed by Novus in its Denver office as an Executive Western Regional Manager. Sax was a "highly compensated" employee under the standards set by the Colorado Department of Labor and Employment for the entirety of his employment at Novus. Since at least January 2025, Sax has been employed by Texana. On information and belief, Sax resides in Greenwood Village, Colorado.

**RESPONSE:** Defendants admit the allegations contained in Paragraph 10 of Plaintiff's Complaint.

11.      From approximately May 2024 to January 2025, Defendant Michael Collins was employed by Novus in its Denver office as an Executive Western Regional Manager.  Collins was a "highly compensated" employee under the standards set by the Colorado Department of Labor and Employment for the entirety of his employment at Novus.  Since at least January 2025, Collins has been employed by Texana. On information and belief, Collins resides in Lone Tree, Colorado.

**RESPONSE:** Defendants admit the allegations contained in Paragraph 11 of Plaintiff's Complaint.

## JURISDICTION AND VENUE

12.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000.

**RESPONSE:** Defendants admit that Plaintiff and Defendants are citizens of different states. Defendants admit that Plaintiff is claiming an amount that exceeds $75,000 but denies that Plaintiff is entitled to any amount in damages.

13.      This Court also has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1367 because this action arises in part under the laws of the United States and because the remaining claims are so related to the federal claims that they form part of the same case or controversy.

**RESPONSE:** Defendants admit that this Court has subject matter jurisdiction over Plaintiff's claims under the referenced statutes. Defendants deny the remaining allegations contained in Paragraph 13 of Plaintiff's Complaint.

14.      Each Defendant is subject to personal jurisdiction in this Court because this action arises out of actions the Defendants took in Colorado to harm Novus.

**RESPONSE:** Defendants admit that this Court has personal jurisdiction over Plaintiff's claims. Defendants deny the remaining allegations contained in Paragraph 14 of Plaintiff's Complaint.

15.    Sax and Collins are additionally subject to personal jurisdiction in this Court because they executed Protective Agreements with Novus in which they agreed "venue shall be the State or Federal courts sitting in Colorado and the parties waive any defense, whether asserted by motion or pleading, that the venue specified by this [agreement] is an improper or inconvenient venue."

**RESPONSE:** Defendants admit that the Protective Agreements speak for themselves and deny any characterization inconsistent with same.

## BACKGROUND

### I.    Novus Home Mortgage invests significant resources in its employees and in building customer and referral relationships.

16.    Novus provides mortgage services to individuals and businesses across the United States.

**RESPONSE:** Defendants admit the allegations contained in Paragraph 16 of Plaintiff's Complaint.

17.    The banking business relies on relationships, and it takes years to develop the types of relationships with customers and referral sources that keep them returning to Novus for their banking and lending needs.

**RESPONSE:** Upon information and belief, Defendants admit the allegations contained in Paragraph 17 of Plaintiff's Complaint.

18.    Because of how difficult it is to earn and keep a customer's business, Novus invests significant resources to train and assist its employees in strengthening their skills and relationships

with Novus's customers. The loss of an employee means the loss not only of revenue but also customer trust and goodwill.

**RESPONSE:** Defendants are without knowledge sufficient to admit or deny the allegations contained in Paragraph 18 of Plaintiff's Complaint and therefore deny same. Defendants specifically deny that Novus invested significant resources to train and assist Sax, Collins, or the employees who worked for them.

19.     In particular, Novus hires and trains management staff to oversee and support its operations. Those managers and executives, which until recently included Sax and Collins, are responsible for training and overseeing their staffs and developing business.

**RESPONSE:** Defendants deny the allegations contained in Paragraph 19 of Plaintiff's Complaint.

20.     By investing in its employees and customer relationships, Novus has generated significant revenues and profits. Novus anticipated this would have continued if Defendants had not schemed to destroy the business it took Novus years to build.

**RESPONSE:** Defendants are without knowledge sufficient to admit or deny the allegations contained in the first sentence of Paragraph 20 of Plaintiff's Complaint and therefore deny same. Defendants specifically deny the allegations contained in the second sentence of Paragraph 20 of Plaintiff's Complaint.

**II.     Novus hires Sax and Collins to build its Colorado presence and enters into agreements with them to protect Novus's customer and employee relationships.**

21.     In May 2024, Novus hired Sax and Collins to strengthen Novus's presence in Colorado and build long-term relationships with customers and referral sources.

7

**RESPONSE:** Defendants admit only that Sax and Collins were hired by Novus in May 2024. Defendants are without knowledge sufficient to admit or deny the remaining allegations contained in Paragraph 21 of Plaintiff's Complaint and therefore deny same.

22.    Novus made significant investments to give Sax and Collins the team and resources they needed to succeed in Denver in a new office space.

**RESPONSE:** Defendants deny the allegations contained in Paragraph 22 of Plaintiff's Complaint.

23.    In August 2024, Novus subleased office space in Denver for Sax and Collins and their team (the "Denver Novus Office"). Novus must pay nearly $300,000 in rent over the life of the sublease that has now been cleared out and is sitting empty.

**RESPONSE:** Defendants admit the allegations contained in Paragraph 23 of Plaintiff's Complaint.

24.    Novus invested in recruiting a team to support Sax and Collins. In particular, Novus paid fees to a recruiter to locate and hire talented employees for Sax and Collins.

**RESPONSE:** Defendants admit the allegations contained in Paragraph 24 of Plaintiff's Complaint.

25.    Sax and Collins's team included the following (with Sax and Collins, the "Former Employees"):

| Employee | Position |
|---|---|
| John Adam | Loan Officer |
| Tyler Andersen | Loan Officer Assistant |
| Keith Balesk | Loan Officer |
| Joseph Ball | Part-time Loan Officer |

| | |
|---|---|
| Kevin Barrett | Part-time Loan Officer |
| Tammy Benoit | Loan Processor 3 |
| Susan Callaghan | Loan Officer |
| Adam Cocozza | Part-time Loan Officer |
| Thomas Daymil | Loan Officer |
| Tommy Frangella | Loan Officer |
| Ryan Graham | Loan Officer |
| Dana Holland | Loan Officer |
| Dallin Johnson | Loan Officer |
| David Kravets | Loan Officer |
| Christine Lombard | Loan Officer |
| James McClure | Loan Officer |
| Clayton Olson | Loan Officer Assistant |
| Herbert Pounders | Loan Officer |
| Sara Riney | Loan Processor 1 |
| Neve Seibert | Loan Officer |
| Robert Smith | Part-time Loan Officer |
| Kevin Tuccitto | Loan Officer |
| Albin Ulle | Part-time Loan Officer |
| Iris Vargas Castillo | Loan Officer |

**RESPONSE:** Defendants admit the allegations contained in Paragraph 25 of Plaintiff's Complaint.

26.     Novus entered into multiple agreements with Sax, Collins, and the other Former Employees (with the exception of Benoit and Riney, who performed administrative roles).

**RESPONSE:** Defendants admit the allegations contained in Paragraph 26 of Plaintiff's Complaint.

27.     For example, Sax and Collins each executed a "Non-Producing Branch Manager Employment Agreement" with Novus.

**RESPONSE:** Defendants admit the allegations contained in Paragraph 27 of Plaintiff's Complaint.

28.     Former Employees Adam, Ball, Callaghan, Daymil, Frangella, Graham, Holland, Johnson, Kravets, Lombard, McClure, Pounders, Siebert, Tuccitto, and Vargas Castillo each executed a "Loan Officer Employment Agreement" with Novus.

**RESPONSE:** Defendants admit the allegations contained in Paragraph 28 of Plaintiff's Complaint.

29.     Former Employees Balesk, Barrett, Cocozza, Smith, and Ulle each executed a "Part-Time Loan Officer Employment Agreement" with Novus.

**RESPONSE:** Defendants admit the allegations contained in Paragraph 29 of Plaintiff's Complaint.

30.     Former Employees Andersen and Olson each executed a "Loan Officer Assistant Employment Agreement" with Novus.

**RESPONSE:** Defendants admit the allegations contained in Paragraph 30 of Plaintiff's Complaint.

31.     The agreements described above executed by the Former Employees are, together, the "Employment Agreements."

**RESPONSE:** The allegations in Paragraph 31 of Plaintiff's Complaint do not require admission or denial. To the extent a response is required, Defendants admit the allegations contained in Paragraph 31 of Plaintiff's Complaint.

32.     Each of the Former Employees (with the exception of Benoit and Riney) also executed a "Protective Agreement" with Novus. Before signing, the Protective Orders (and before accepting employment offers with Novus), the employees who were based in Colorado (all except Balesk, Frangella, and Kravets) received and signed notices stating:

> This notice is to advise you that [Novus] is, contemporaneously with this notice, providing you with a Protective Agreement (the "Agreement") containing covenants that could restrict your options for subsequent employment following separation from the Company, in that you will be prohibited from certain solicitation of Restricted Customers, Referral Sources, employees, etc. as developed in Section 3.1 through Section 3.4 of the Agreement (as modified by the Colorado Addendum) and from disclosing or using Confidential Information.

**RESPONSE:** Defendants are without knowledge sufficient to admit or deny the allegations in Paragraph 32 of the Complaint and therefore deny same.

33.     The Employment Agreements and Protective Agreements contain several provisions to protect Novus's investments in the employees, to protect Novus from unfair competition, and to protect Novus's customers from unauthorized disclosures of their confidential information.

**RESPONSE:** Defendants state that the Employment Agreements and Protective Agreement speak for themselves and deny any characterization inconsistent with same.

34.    For instance, each of the Employment Agreements provides the following:

a.  Novus's "Confidential Material" "shall not be used by Employee, including after termination, for any purpose unrelated to Employee's work for [Novus]." (Non-Producing Branch Manager Employment Agreement § 4.a; Part-Time Loan Officer Employment Agreement § 7.a; Loan Officer Assistant Employment Agreement § 7.a.)

b.  The Former Employees may not "use Confidential Material or Trade Secrets for the benefit of any person or entity other than [Novus]" and may not "remove, copy, duplicate or otherwise reproduce any document or tangible item embodying or pertaining to any of the Confidential Material or Trade Secrets, except as required to perform responsibilities for [Novus.]" (Non-Producing Branch Manager Employment Agreement § 4.b; Part-Time Loan Officer Employment Agreement § 7.b; Loan Officer Assistant Employment Agreement § 7.b.)

c.  Upon termination of employment with Novus, the Former Employees must "promptly deliver to [Novus] the originals and copies of all documents, records and property of any nature whatsoever in the Employee's possession or control which contain or consist of the Confidential Information." (Non-Producing Branch Manager Employment Agreement § 4.d; Part-Time Loan Officer Employment Agreement § 7.d; Loan Officer Assistant Employment Agreement § 7.d.)

d.  "Any computer, furniture, equipment, software, or log-in credentials provided" by Novus to the Former Employees "shall be used solely for the purpose of generating Business for Company." (Non-Producing Branch Manager Employment Agreement § 7; Part-Time Loan Officer Employment Agreement § 10; Loan Officer Assistant Employment Agreement § 10.) Upon termination of employment, the Former Employees must "immediately deliver to Company any or all of Company's property in Employee's possession or under Employee's control, including, but not limited to computers, company phones, furniture, equipment, software (including all copies of computer software and all data), log-in credentials, and any Confidential Material." (Id.)

    e.   While employed by Novus, the Former Employees "shall not be employed by or represent any other mortgage banker, mortgage broker or other financial services provider to consumers[.]" (Non- Producing Branch Manager Employment Agreement § 12; Part-Time Loan Officer Employment Agreement § 5; Loan Officer Assistant Employment Agreement § 5.)

**RESPONSE:** Defendants state that the Employment Agreements and Protective Agreement speak for themselves and deny any characterization inconsistent with same.

    35.   The Protective Agreements contain the following provisions:

    a.   During their employment with Novus, the Former Employees may not "directly or Indirectly engage in any employment or business activity which is competitive with, or would otherwise conflict with, Employee's employment by the Company." (Protective Agreements § 1.1.)

    b.   The Former Employees must "disclose…to any future prospective employers the existence of this Agreement and the nature of Employee's confidentiality and restrictive covenant obligations arising from it before Employee accepts any new position of employment." (Protective Agreements § 1.2.)

    c.   The Former Employees may not solicit Novus customers, referral sources, and employees during employment and for one year following termination. (Protective Agreements §§ 3.1–3.3.)1

    d.   The Former Employees may not use "Confidential Information or Trade Secrets" for the benefit of anyone but Novus and may not remove or copy "Confidential Information or Trade Secrets" except as needed to perform responsibilities for Novus. (Protective Agreements § 4.1.);

    e.   Sax and Collins must immediately return all of Novus's property on the Employee's last day of work and to delete any Novus information from the Employee's personal devices. (Protective Agreements § 5.)

**RESPONSE:** Defendants state that the Employment Agreements and Protective Agreement speak for themselves and deny any characterization inconsistent with same.

**III.    Defendants secretly plot for Sax, Collins, and the Former Employees to begin working for Texana's benefit while still employed by Novus in breach of their agreements and violation of their duty of loyalty.**

36.    By early December 2024, Sax and Collins had decided to disregard their obligations to Novus and had solicited some or all of the Former Employees to leave Novus and join Texana. By December 11, 2024, Texana had begun completing paperwork needed for Former Employees to transfer their Nationwide Multistate Licensing System (NMLS) registration from Novus to Texana. But no one informed Novus of these plans until January 2025.

**RESPONSE:** Defendants deny the allegations contained in Paragraph 36 of Plaintiff's Complaint.

37.    Worse, by December 2024, Sax and Collins and the other Former Employees, despite still being employed by Novus, had ceased working for Novus's benefit and were secretly working on behalf of Texana. Instead of processing incoming loan applications with Novus, they sent those opportunities to Texana. They did this with Defendants' knowledge and encouragement, often using personal email accounts to hide their unethical and wrongful conduct from Novus.

**RESPONSE:** Defendants deny the allegations contained in Paragraph 37 of Plaintiff's Complaint.

38.    For example, on December 4, 2024, Former Employee Dana Holland, while still employed by Novus, emailed Manny Uceda, Texana's Vice President of Mortgage Lending, from her personal email account. Holland wanted Uceda's help figuring out if she could process a particular type of loan with Texana. Uceda forwarded that email to a representative at PennyMac Financial Services and stated that Sax and Collins' team at Novus was a "group closing 30–40 monthly units looking to join Texana Bank." Uceda then added Sax to the chain, who responded enthusiastically, stating "Perfect!" and "Great news! Thank you!"

**RESPONSE:** Defendants admit that the referenced communications speak for themselves and deny any characterization inconsistent with same. Defendants deny the remaining allegations contained in Paragraph 38 of Plaintiff's Complaint.

39.     On December 16, 2024, Former Employee Neve Seibert, while still employed by Novus, sent information regarding a pending loan from her Novus account to his personal email account. Texana, not Novus, processed that loan.

**RESPONSE:** Defendants deny the allegations contained in Paragraph 39 of Plaintiff's Complaint.

40.     On December 18, 2024, Seibert received an email in his Novus email account about a pending loan. Again, despite being employed by Novus, Seibert worked with Nella Longobardo, a Texana loan processing manager, to ensure Texana and not Novus would receive this loan.

**RESPONSE:** Defendants admit that the referenced communication speaks for itself and deny any characterization inconsistent with same. Defendants deny the remaining allegations in Paragraph 40 of Plaintiff's Complaint.

41.     On December 19, 2024, Former Employee Kevin Tuccitto, still employed by Novus, emailed loan information from his Novus account to his personal account and then forwarded it to Sax and Manny Uceda at Texana, stating "I have a new loan I'm bringing to Texana[.]"

**RESPONSE:** Defendants admit that the referenced communication speaks for itself and deny any characterization inconsistent with same. Defendants deny the remaining allegations contained in Paragraph 41 of Plaintiff's Complaint.

42.     On December 30 and 31, 2024, Former Employee Joseph Ball, while still employed by Novus, sent himself four emails from his Novus account to his personal account attaching

several confidential documents concerning a pending loan, including private and confidential information such as W-2 forms. That loan opportunity was provided to Texana, not Novus.

**RESPONSE:** Defendants deny the allegations contained in Paragraph 42 of Plaintiff's Complaint.

43.     On December 31, 2024, Former Employee Clayton Olson emailed himself from his Novus account to a Texana account in his name (cj.olson@texanabank.com). Novus had still not been informed that Sax, Collins, or any of the Former Employees planned to leave, but Texana had already created an email account for Olson, demonstrating Texana's ongoing and active involvement in their deceit. Texana was working jointly with the Former Employees, including the individual Defendants, in breaching their duties to Novus and violating the law.

**RESPONSE:** Defendants deny the allegations contained in Paragraph 43 of Plaintiff's Complaint.

44.     Ball attached to his email several documents for a pending loan application, including contract documents and a tax bill. That loan opportunity was provided to Texana, not Novus.

**RESPONSE:** Defendants admit that the referenced communication speaks for itself and deny any characterization inconsistent with same. Defendants deny the remaining allegations contained in Paragraph 44 of Plaintiff's Complaint.

45.     The Former Employees also surreptitiously removed highly sensitive, confidential, proprietary, trade secret information from Novus for use at Texana in express violation of their obligations to Novus.

**RESPONSE:** Defendants deny the allegations contained in Paragraph 45 of Plaintiff's Complaint.

46.     The Denver Novus office maintained a spreadsheet of pending loans that it called the "pipeline." The "pipeline" spreadsheet was regularly updated and circulated by email, and it

contained information including loan numbers, borrower names, loan amounts, estimated closing dates, and information concerning the progress of the loan application.

**RESPONSE:** Defendants admit the allegations contained in Paragraph 46 of Plaintiff's Complaint.

47.     On December 5, 2024, Former Employee Parker McClure forwarded the pipeline spreadsheet to Defendant Scott Sax and stated "I uploaded it to teams so you should be all set[.]" On December 10, 12, and 19, 2024, McClure notified Sax that he had uploaded the most current pipeline spreadsheets to "box" or "the box." Sax thanked McClure each time.

**RESPONSE:** Defendants admit the allegations contained in Paragraph 47 of Plaintiff's Complaint.

48.     On information and belief, McClure was referring to Microsoft Teams and Box, popular filesharing services where users can upload files and share them with others. McClure and Sax had no legitimate business reason to upload this information to a non-Novus server, and doing so breached their contractual obligations to Novus. On information and belief, they uploaded these spreadsheets so they could use the confidential information they contained for Texana's benefit and access the information after their employment with Novus terminated.

**RESPONSE:** Defendants deny the allegations contained in Paragraph 48 of Plaintiff's Complaint.

49.     On December 11, 2024, Former Employee Adam Cocozza, while still employed by Novus, sent an email from his Novus account to his personal account with the subject line "Clients for Boomerang Mailing List" and attached a spreadsheet with the filename "WHOLE OFFICE LOAN LIST.xlsx." The spreadsheet contained over 6500 entries regarding completed or pending loans, including names and contact information for borrowers, buyers' agents, and sellers' agents

and detailed information regarding loan amounts and interest rates. Boomerang is a direct marketing firm. On information and belief, Sax, Collins, and the Former Employees intended to use this list to notify customer and prospective customer of their move from Novus to Texana.

**RESPONSE:** Defendants admit the allegations in Paragraph 49 of Plaintiff's Complaint to the extent that the documents in question predated the Former Employees' employment with Novus and were not the property of Novus. Defendants deny the remaining allegations contained in Paragraph 49 of Plaintiff's Complaint.

50.    On December 30, 2024, Former Employee Joseph Ball, in addition to emailing himself confidential loan information, also sent himself at least three emails from his Novus account to his personal account attaching several Novus documents to each email, including forms, checklists, and templates. On information and belief, he sent himself these documents for use at his anticipated new position at Texana. These documents were the property of Novus.

**RESPONSE:** Defendants are without knowledge sufficient to admit or deny the allegations contained in Paragraph 50 of Plaintiff's Complaint and therefore deny same.

51.    And from December 3, 2024 to January 3, 2025, Former Employee David Kravets forwarded himself approximately 468 emails from his Novus account to his personal account. On information and belief, he emailed himself this information for use at Texana.

**RESPONSE:** Defendants are without knowledge sufficient to admit or deny the allegations contained in Paragraph 51 of Plaintiff's Complaint and therefore deny same.

**IV.    Sax and Collins lie to Novus, claiming they had not moved any loan applications to Texana.**

52.    On the evening of Friday, January 3, 2025, after working in secret for at least a month to shuttle loan applications to Texana and remove confidential information from Novus,

Sax and Collins spoke with Novus's National Sales Director, Brian Jensen, and finally admitted that they were leaving Novus for Texana and had solicited the Former Employees to join them.

**RESPONSE:** Defendants deny the allegations contained in Paragraph 52 of Plaintiff's Complaint.

53.    Jensen asked Sax and Collins if they had transferred any loan files or applicants from Novus to Texana. Sax and Collins assured him they had not. Trusting that representation, Jensen followed up with an email that, among other things, stated "[w]e expect the active pipeline to close with Novus…We will work with your processors on Monday to get a full knowledge transfers of the loans in the pipeline that will be closing."

**RESPONSE:** Defendants admit that the referenced communication speaks for itself and deny any characterization inconsistent with same. Defendants deny the remaining allegations contained in Paragraph 53 of Plaintiff's Complaint.

54.    Sax and Collins lied to Jensen. As discussed above, for at least a month the Former Employees, with Sax, Collins' and Texana's knowledge and approval, had been transferring loans to Texana. In fact, when Novus recently cleared out the Denver Novus Office, it found a printed copy of a January 2, 2025 email from Nella Longobardo at Texana to Sax and Collins, several other Former Employees, and Texana VP Manny Uceda with the subject line "Denver loans." The email provided a status update on 14 loans Texana was processing that had been submitted by the Former Employees while still employed by Novus. Longobardo sent that email just a day before Sax and Collins falsely represented to Novus that no loan applications had been transferred to Texana.

**RESPONSE:** Defendants deny the allegations that Sax and Collins lied to Jensen and transferred loans to Texana for at least a month before the end of their relationship with Novus. Defendants

19

are without knowledge sufficient to admit or deny the remaining allegations contained in Paragraph 54 of Plaintiff's Complaint and therefore deny same.

55.    Novus also found several "Underwriting Approval Summaries" on Texana letterhead in the Denver Novus Office regarding loans Texana was processing that had been referred by Former Employees in December 2024, while they were still employed by Novus.

**RESPONSE:** Defendants are without knowledge sufficient to admit or deny the allegations contained in Paragraph 55 of Plaintiff's Complaint and therefore deny same.

56.    Upon learning that Sax, Collins and the Former Employees planned to join a competitor, Texana, Novus terminated them and changed the locks on the Denver Novus Office so they could no longer use the office to advance Texana's interests to Novus's benefit.

**RESPONSE:** Defendants admit that some of the Former Employees were terminated by Novus. Defendants deny that Sax and Collins were terminated by Novus. Defendants deny the remaining allegations contained in Paragraph 56 of Plaintiff's Complaint.

57.    The Former Employees failed to return equipment Novus issued to them, including 28 laptop computers containing confidential Novus information.

**RESPONSE:** Defendants deny the allegations contained in Paragraph 57 of Plaintiff's Complaint.

58.    The web domain used by the Denver Novus Office, although owned by Novus, is registered in the names of two Former Employees. They have failed to transfer control of the web domain to Novus.

**RESPONSE:** Defendants are without knowledge sufficient to admit or deny the allegations contained in Paragraph 58 of Plaintiff's Complaint and therefore deny same.

59.     Initially, Sax, Collins, and Texana agreed to assume the sublease for the Denver
Novus Office and to continue using it for Texana. However, they insisted they be given access to
the office to "inspect" it before assuming the sublease. This made no sense: Sax and Collins
worked out of the office from the beginning of the sublease through January 6, 2025 and were
more familiar with it and its condition than anyone else. They had no need to "inspect" it unless
they planned to steal more Novus data, information, or assets.

**RESPONSE:** Defendants admit that they initially agreed to assume the sublease for the Denver
Novus Office before Novus reneged on the terms of the parties' agreement. Defendants deny the
remaining allegations contained in Paragraph 59 of Plaintiff's Complaint.

60.     Sax and Collins thereafter tried several times to gain unauthorized entry to the
Denver Novus Office, including by contacting and harassing the building's management and
cleaning staff to let them in. The building's management informed Novus that Sax had been
aggressive and threatening in demanding access. Sax and Collins of course have no right to access
the Denver Novus Office after their termination; in fact, it would be a criminal trespass.

**RESPONSE:** Defendants deny the allegations contained in Paragraph 60 of Plaintiff's Complaint.

61.     On information and belief, Sax and Collins wanted to access the Denver Novus
Office after their termination to continue removing confidential information for Texana's benefit
and to destroy evidence indicating the extent to which they had been working on Texana's behalf
while employed by Novus, such as the printed emails and documents from Texana that Novus has
already discovered.

**RESPONSE:** Defendants deny the allegations contained in Paragraph 61 of Plaintiff's Complaint.

**V.     Defendants have damaged Novus and unjustly enriched Texana.**

62.     Defendants' actions have damaged and will continue to damage Novus.

**RESPONSE:** Defendants deny the allegations contained in Paragraph 62 of Plaintiff's Complaint.

63.     Some of Novus's losses are immediate and easily measurable. For example, Novus is now party to a sublease for the Denver Novus Office that it no longer needs and which was provided to the individual Defendants at great expense so they could build out the Denver office and support the growth of Novus.

**RESPONSE:** Defendants deny the allegations contained in Paragraph 63 of Plaintiff's Complaint.

64.     Further, since at least December 2024, Sax, Collins, and the other Former Employees were using the Denver Novus Office, their company-issued laptops, their Novus email accounts, and every other resource Novus provided them to work against Novus's interests and on behalf of one of its competitors, Texana. Novus has been significantly damaged by these actions, and Texana unjustly enriched by them.

**RESPONSE:** Defendants deny the allegations contained in Paragraph 64 of Plaintiff's Complaint.

65.     Because of Defendants' actions, Novus's investments in recruiting and training the Former Employees now inure to Texana's benefit and not Novus's. In particular, Novus paid a recruiter for at least one employee who never performed any work for Novus and instead immediately began working for Texana, yet Texana has refused to reimburse Novus for that expense and has improperly retained the benefit.

**RESPONSE:** Defendants deny the allegations contained in Paragraph 65 of Plaintiff's Complaint.

66.     And despite Sax and Collins's lies, they and the Former Employees shuttled as many opportunities as possible to Texana while still employed by Novus and while obligated to

work for Novus's benefit and not its competitor's. Defendants' actions have resulted in Texana and not Novus profiting from those opportunities.

**RESPONSE:** Defendants deny the allegations contained in Paragraph 66 of Plaintiff's Complaint.

67.    But Novus's most profound losses are as of yet fully unknown and will continue well into the future.

**RESPONSE:** Defendants deny the allegations contained in Paragraph 67 of Plaintiff's Complaint.

68.    Novus has lost the goodwill it entrusted Sax and Collins to build in Denver and the surrounding area. It has lost the Former Employees to Texana despite Sax and Collins' explicit contractual obligations not to solicit them to leave. Novus is now subject to competition from its own workers who left because of Defendants' breach of their obligations. Novus not only lost the loans that the Former Employees funneled to Texana while they were supposed to be working for Novus, it will continue losing business opportunities for years to come that it would have had but for Defendants' wrongful actions.

**RESPONSE:** Defendants deny the allegations contained in Paragraph 68 of Plaintiff's Complaint.

69.    And Texana has obtained unknown amounts of Novus's confidential and trade secret information because of Sax, Collins, and the Former Employees. It is impossible for Novus to know at this early stage, without the benefit of discovery, the extent to which the Former Employees raided Novus's files and took them for Texana's benefit. Based on the information available to Novus, it appears the Former Employees attempted to use their personal email addresses as much as possible to escape Novus's detection while they actively plotted against it. It also appears they may have used filesharing services including Box, Microsoft Teams, and a Microsoft 365 Family subscription to remove and store information in the cloud without detection

by Novus. The ultimate extent of Defendants' actions to strip Novus of its employees, customers, potential customers and confidential information to benefit Texana remains to be seen.

**RESPONSE:** Defendants deny the allegations contained in Paragraph 69 of Plaintiff's Complaint.

70.     Through this action, Novus seeks relief for Defendants' unfair, unethical, and illegal conduct which has and will cost Novus millions of dollars.

**RESPONSE:** Defendants admit that Novus seeks relief on its claims. Defendants deny that Defendants have acted unlawfully in any way, deny that Novus is entitled to any such relief, and deny all remaining allegations contained in Paragraph 70 of Plaintiff's Complaint.

### COUNT ONE
### Breach of Contract
### (Against Sax & Collins)

71.     Novus realleges and incorporates by reference each of the allegations above as if fully set forth herein.

**RESPONSE:**  Defendants incorporate by reference and re-allege their responses to each of the allegations above as if fully set forth herein.

72.     The Protective Agreements are valid and enforceable contracts.

**RESPONSE:** The allegation that the Protective Agreements are valid and enforceable is a legal conclusion that does not require a response.  To the extent that it does require a response, Defendants deny the allegations contained in Paragraph 72 of Plaintiff's Complaint.

73.     Sax and Collins were both "highly compensated" employees under the standards set by the Colorado Department of Labor and Employment during the entirety of their employment at Novus. As alleged above, before accepting employment offers with Novus, Sax and Collins

received and signed notices regarding the nonsolicitation and confidentiality restrictions in the
Protective Agreements.

**RESPONSE:** Defendants deny the allegations contained in Paragraph 73 of Plaintiff's Complaint.

74.    Sax and Collins breached the Protective Agreements in myriad ways:

a.    They worked on behalf of Texana, in breach of their obligation to not "directly or Indirectly engage in any employment or business activity which is competitive with, or would otherwise conflict with, Employee's employment by [Novus]." (Protective Agreements § 1.1.)

b.    The Protective Agreements provide that "Employee specifically understands and agrees that information pertaining to borrowers or potential borrowers of [Novus] that Employee obtains as an employee of [Novus] is and shall remain the Confidential Information of [Novus] and shall not be used by Employee at any time, including after the Last Day (defined below), for any purpose unrelated to Employee's work for [Novus]." (Protective Agreements § 2.1.) But Sax and Collins oversaw the Former Employees while they removed borrower information to personal email accounts and then provided it to Texana for Texana's use, often being themselves copied on these communications.

c.    On information and belief, Sax and Collins removed other "Confidential Information" from Novus, either directly or via their oversight and direction of the Former Employees, in further breach of their confidentiality obligations to Novus. (Protective Agreements §§ 2.1, 4.1.)

d.    Sax and Collins solicited and encouraged the Former Employees to leave Novus and join Texana, in breach of their employee nonsolicitation obligations. (Protective Agreements § 3.3.)

e.    Sax and Collins solicited and encouraged Novus customers, either directly or via their oversight and direction of the Former Employees, to terminate their relationships with Novus and enter relationships with Texana, in breach of their customer nonsolicitation obligations. (Protective Agreements § 3.1.)

f.    Sax and Collins breached their obligation to, upon termination, "immediately return to [Novus] all property belonging to [Novus] (in electronic or hard-copy form)" and to "cooperate with [Novus] to remove or delete" Novus information from their personal devices. (Protective

Agreements § 5.) Sax and Collins have not returned to Novus the laptops and other devices Novus issued them.

**RESPONSE:** Defendants deny the allegations contained in Paragraph 74 of Plaintiff's Complaint.

75.     On information and belief, discovery will uncover further breaches of the Protective Agreements.

**RESPONSE:** Defendants deny the allegations contained in Paragraph 75 of Plaintiff's Complaint.

76.     Sax and Collins's breaches have damaged Novus in an amount to be determined at trial.

**RESPONSE:** Defendants deny the allegations contained in Paragraph 76 of Plaintiff's Complaint.

77.     Further, the Protective Agreements entitle Novus to "the recovery and return of any amount paid to [Sax and Collins] to enter into this Agreement, the disgorgement of any profits, commissions, or fees realized by Employee, [and] any subsequent employers[.]" (Protective Agreements § 8.)

**RESPONSE:** Defendants admit the Protective Agreements speak for themselves and deny any characterization inconsistent with same. Defendants deny the remaining allegations contained in Paragraph 77 of Plaintiff's Complaint.

78.     The Protective Agreements also provide that Sax and Collins "shall pay [Novus] all reasonable costs and attorneys' fees [Novus] incurred because of [Sax and Collins's] breach of this Agreement." (Protective Agreements § 8.)

**RESPONSE:** Defendants admit the Protective Agreements speak for themselves and deny any characterization inconsistent with same. Defendants deny the remaining allegations contained in Paragraph 77 of Plaintiff's Complaint.

**COUNT TWO**

**Tortious Interference With Contract**
**(Against all Defendants)**

79.    Novus realleges and incorporates by reference each of the allegations above as if fully set forth herein.

**RESPONSE:** Defendants incorporate by reference and re-allege their responses to each of the allegations above as if fully set forth herein.

80.    The Employment Agreements and Protective Agreements executed by the Former Employees are valid and enforceable agreements.

**RESPONSE:** The allegation that the Employment Agreements and Protective Agreements are valid and enforceable is a legal conclusion which does not require a response.  To the extent that it does require a response, Defendants deny the allegations contained in Paragraph 80 of Plaintiff's Complaint.

81.    Sax and Collins were aware of each other's Employment Agreements and Protective Agreements. They held the same position in the same office and executed these agreements on the same day as one another. They understood these agreements were conditions of employment with Novus.

**RESPONSE:** Defendants admit that the Employment Agreements and Protective Agreements speak for themselves and deny any characterization inconsistent with same. Defendants deny the remaining allegations contained in Paragraph 81 of Plaintiff's Complaint.

82.    Sax and Collins were further aware of the other Former Employees' Employment Agreements and Protective Agreements. Again, as managerial employees who oversaw the Former Employees, they understood these were standard agreements that Novus required of all employees

that held the positions held by the Former Employees. In fact, Collins signed the cover sheet to at least some of the Employment Agreements.

**RESPONSE:** Defendants admit that the Employment Agreements and Protective Agreements speak for themselves and deny any characterization inconsistent with same. Defendants deny the remaining allegations contained in Paragraph 82 of Plaintiff's Complaint.

83.    On information and belief, Texana was aware of the existence of the Former Employees' Employment Agreements and Protective Agreements. The Protective Agreements required the Former Employees to disclose "to any future prospective employers the existence of this [Protective] Agreement and the nature of Employee's confidentiality and restrictive covenant obligations arising from it before Employee accepts any new position of employment." (Protective Agreements § 1.2.) And Texana is a sophisticated and experienced bank and mortgage lender. It knows that federal regulation including the Gramm-Leach-Bliley Act requires financial institutions to take measures to prevent disclosure of nonpublic personal information. If further knows that due to the competitive nature of the business, disclosure of confidential information or solicitation of employees and customers can cause significant damage. Given this, it is aware that banks and mortgage lenders nearly always require employees who hold the positions held by the Former Employees to sign confidentiality and nonsolicitation agreements.

**RESPONSE:** Defendants admit that the Employment Agreements and Protective Agreements speak for themselves and deny any characterization inconsistent with same. Defendants admit that Texana is a sophisticated and experienced bank and mortgage lender. Defendants are without knowledge sufficient to admit or deny the remaining allegations in Paragraph 83 of the Complaint and therefore deny same.

84.    All Former Employees breached their Protective Agreements in the same manner as Sax and Collins as alleged above. They also all breached various provisions of their Employment Agreements:

    a.    They breached their obligations to, while employed by Novus, "not be employed by or represent any other mortgage banker, mortgage broker or other financial services provider to consumers[.]" (Non- Producing Branch Manager Employment Agreement § 12; Part-Time Loan Officer Employment Agreement § 5; Loan Officer Assistant Employment Agreement § 5.)

    b.    They breached their confidentiality obligations by removing confidential and trade secret information (including customer information) and using it for their own benefit or that of Texana. (Non-Producing Branch Manager Employment Agreement §§ 4.a–b; Part-Time Loan Officer Employment Agreement § 7.a–b; Loan Officer Assistant Employment Agreement § 7.a–b.)

    c.    They breached their obligations, upon termination of employment with Novus, to "promptly deliver to [Novus] the originals and copies of all documents, records and property of any nature whatsoever in the Employee's possession or control which contain or consist of the Confidential Information." (Non-Producing Branch Manager Employment Agreement § 4.d; Part-Time Loan Officer Employment Agreement § 7.d; Loan Officer Assistant Employment Agreement § 7.d.)

    d.    They breached their obligations that "[a]ny computer, furniture, equipment, software, or log-in credentials provided" by Novus to the Former Employees "shall be used solely for the purpose of generating Business for [Novus]." (Non-Producing Branch Manager Employment Agreement § 7; Part-Time Loan Officer Employment Agreement § 10; Loan Officer Assistant Employment Agreement § 10.)

    e.    They breached their obligations, upon termination of employment, to "immediately deliver to Company any or all of Company's property in Employee's possession or under Employee's control, including, but not limited to computers, company phones, furniture, equipment, software (including all copies of computer software and all data), log-in credentials, and any Confidential Material." (Non-Producing Branch Manager Employment Agreement § 7; Part-Time Loan Officer

Employment Agreement § 10; Loan Officer Assistant Employment
Agreement § 10.)

**RESPONSE:** Defendants deny the allegations contained in Paragraph 84 of Plaintiff's Complaint.

85.    Each of the Defendants intended that the Former Employees breach their
Employment Agreements and Protective Agreements.

**RESPONSE:** Defendants deny the allegations contained in Paragraph 85 of Plaintiff's Complaint.

86.    Sax and Collins solicited the Former Employees to work for Texana's benefit and
were included on communications where Former Employees transferred confidential borrower
information and business opportunities to Texana. On information and belief, Sax and Collins did
so believing they would be compensated by Texana for their breaches and disloyalty.

**RESPONSE:** Defendants deny the allegations contained in Paragraph 86 of Plaintiff's Complaint.

87.    Texana encouraged the illegal solicitation of the Former Employees by helping
them transfer their NMLS registrations and providing Texana email accounts to Former
Employees while they were still employed by Novus. It encouraged breaches of confidentiality
obligations and customer nonsolicitation obligations by accepting that information and then
processing loans for would-be Novus customers and reaping the financial benefit. These breaches
further benefitted Texana by giving it a readymade foothold in Denver by bringing over Sax and
Collins' team en masse. This would not have been possible but for breaches of the Employment
Agreements and Protective Agreements.

**RESPONSE:** Defendants deny the allegations contained in Paragraph 87 of Plaintiff's Complaint.

88.    Defendants acted improperly in causing these breaches.

**RESPONSE:** Defendants deny the allegations contained in Paragraph 88 of Plaintiff's Complaint.

89.    Defendants' tortious actions damaged Novus in an amount to be determined at trial.

**RESPONSE:** Defendants deny the allegations contained in Paragraph 89 of Plaintiff's Complaint.

## COUNT THREE
### Tortious Interference With Prospective Business Relation
### (Against all Defendants)

90.    Novus realleges and incorporates by reference each of the allegations above as if fully set forth herein.

**RESPONSE:** Defendants incorporate by reference and re-allege their responses to each of the allegations above as if fully set forth herein.

91.    Novus had an expectation of entering into mortgage contracts with existing and prospective customers, including those would-be customers that the Former Employees referred to Texana in December 2024 and January 2025.

**RESPONSE:** Defendants are without knowledge sufficient to admit or deny the allegations in Paragraph 91 of the Complaint and therefore deny same.

92.    Defendants intentionally and improperly interfered with these prospective contractual relations and caused existing and prospective customers not to sign mortgage contracts with Novus and in many instances to sign them with Texana.

**RESPONSE:** Defendants deny the allegations contained in Paragraph 92 of Plaintiff's Complaint.

93.    This conduct was improper. As alleged in this complaint, Defendants accomplished their interference through violation of federal and state trade secrets laws, breaches of contracts, and torts.

**RESPONSE:** Defendants deny the allegations contained in Paragraph 93 of Plaintiff's Complaint.

94.    Defendants' tortious actions damaged Novus in an amount to be determined at trial.

**RESPONSE:** Defendants deny the allegations contained in Paragraph 94 of Plaintiff's Complaint.

**COUNT FOUR**
**Defend Trade Secrets Act (18 U.S.C. § 1836)**
**(Against all Defendants)**

95.     Novus realleges and incorporates by reference each of the allegations above as if fully set forth herein.

**RESPONSE:** Defendants incorporate by reference and re-allege their responses to each of the allegations above as if fully set forth herein.

96.     Novus owns and maintains trade secret information including but not limited to databases of customers and potential customers and highly sensitive information concerning them, including tax returns, Social Security numbers, paystubs, W-2 forms, property valuations, purchase offers, purchase contracts, and loan applications.

**RESPONSE:** Defendants are without knowledge sufficient to admit or deny the allegations contained in Paragraph 96 of Plaintiff's Complaint and therefore deny same.

97.     The trade secrets described above derive actual or potential independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information. For example, this information would permit a competitor to emulate or counter Novus's marketing plans or market loans to Novus's customers and potential customers, thereby taking valuable business from Novus.

**RESPONSE:** Defendants are without knowledge sufficient to admit or deny the allegations contained in Paragraph 97 of Plaintiff's Complaint and therefore deny same.

98.    The trade secrets described above are related to a product or service used in, or intended for use in, interstate or foreign commerce." For example, Novus and Ixonia Bank are based in Wisconsin. The trade secrets included information concerning Novus's nationwide business plans and customers and potential customers located in Colorado and elsewhere. The trade secrets were acquired and disclosed by the Former Employees in Colorado and acquired by Texana, a bank based in Texas.

**RESPONSE:** Defendants are without knowledge sufficient to admit or deny the allegations contained in Paragraph 98 of Plaintiff's Complaint regarding the nature of Novus's trade secrets and therefore deny same. Defendants deny the remaining allegations in Paragraph 98 of the Complaint.

99.    Novus has taken reasonable measures to keep its trade secret information secret. Novus stores information in a secured computer network that can only be accessed by authorized employees with login credentials and passwords. Novus prohibits the use of removable devices such as "thumb drives," removable discs, or memory cards on Novus-issued computers to limit users' ability to copy or remove information. If a user attempts to use a removable device he or she receives an error message and is refused access. Further, Novus requires its employees to sign Employment Agreements and Protective Agreements that prohibit them from disclosing this information or use it for any purpose except for fulfilling their responsibilities for Novus.

**RESPONSE:** Defendants are without knowledge sufficient to admit or deny the allegations contained in Paragraph 99 of Plaintiff's Complaint and therefore deny same.

100.    Sax and Collins, directly and via the Former Employees who they supervised and then solicited to leave Novus for Texana, disclosed Novus's trade secrets to Texana. Some

information, such as the pending "pipeline" was directly provided to Texana. Other information was uploaded to filesharing services or forwarded to personal email accounts for Sax, Collins, or the other Former Employees. On information and belief, that information was removed from Novus's servers for disclosure to and use by Texana. Sax and Collins and the other Former Employees had a duty to maintain the secrecy of the information due to their contractual and common law obligations to Novus.

**RESPONSE:** Defendants deny the allegations contained in Paragraph 100 of Plaintiff's Complaint.

101.    Texana acquired Novus's trade secret information from Sax, Collins, and the other Former Employees. Texana knew or had reason to know it acquired Novus's trade secret information by improper means. On information and belief, Texana was aware of the Former Employees' Employment Agreements and Protective Agreements or was at least aware that they were subject to confidentiality obligations prohibiting them from sharing this information with Texana. Further, every bank and mortgage lender would understand that other banks and mortgage lenders keep this information confidential not only because it provides a competitive advantage but also because government regulations require personal information be kept strictly confidential.

**RESPONSE:** Defendants deny the allegations contained in Paragraph 101 of Plaintiff's Complaint.

102.    Texana's misappropriation of Novus's trade secrets has caused actual losses to Novus in an amount to be determined at trial.

**RESPONSE:** Defendants deny the allegations contained in Paragraph 102 of Plaintiff's Complaint.

103.    Texana's misappropriation of Novus's trade secrets has unjustly enriched Texana in an amount to be determined at trial.

**RESPONSE:** Defendants deny the allegations contained in Paragraph 103 of Plaintiff's Complaint.

104.    In the alternative, Novus is entitled to a reasonable royalty for Texana's unauthorized acquisition or use of Novus's trade secrets.

**RESPONSE:** Defendants deny the allegations contained in Paragraph 104 of Plaintiff's Complaint.

105.    Texana's misappropriation of Novus's trade secrets was and is willful and malicious. Novus is entitled to exemplary damages and reasonable attorney's fees as provided in 18 U.S.C. § 1836(b)(3).

**RESPONSE:** Defendants deny the allegations contained in Paragraph 105 of Plaintiff's Complaint.

## COUNT FIVE
### Colorado Uniform Trade Secrets Act (C.R.S. § 7-74-101, et seq.)
### (Against Texana)

106.    Novus realleges and incorporates by reference each of the allegations above as if fully set forth herein.

**RESPONSE:** Defendants incorporate by reference and re-allege their responses to each of the allegations above as if fully set forth herein.

107.    Novus's trade secrets are secret and of value. Novus obtained the trade secrets by expending significant effort and goodwill, at great expense.

**RESPONSE:** Defendants are without knowledge sufficient to admit or deny the allegations contained in Paragraph 107 of Plaintiff's Complaint and therefore deny same.

108.    As described above, Novus has taken measures to prevent its trade secrets from becoming available to persons other than those selected by Novus to have access thereto for limited purposes.

**RESPONSE:** Defendants are without knowledge sufficient to admit or deny the allegations contained in Paragraph 108 of Plaintiff's Complaint and therefore deny same.

109.    As alleged above, Sax and Collins, directly and via the Former Employees who they supervised and then solicited to leave Novus for Texana, disclosed Novus's trade secrets to Texana. Sax and Collins and the other Former Employees had a duty to maintain the secrecy of the information due to their contractual and common law obligations to Novus.

**RESPONSE:** Defendants deny the allegations contained in Paragraph 109 of Plaintiff's Complaint.

110.    Texana misappropriated Novus's trade secrets by acquiring them. As alleged above, Texana knew or had reason to know that Novus's trade secrets were acquired by improper means.

**RESPONSE:** Defendants deny the allegations contained in Paragraph 110 of Plaintiff's Complaint.

111.    Texana's misappropriation of Novus's trade secrets has caused actual losses to Novus in an amount to be determined at trial.

**RESPONSE:** Defendants deny the allegations contained in Paragraph 111 of Plaintiff's Complaint.

112.    In addition to Novus's actual losses, Texana's misappropriation of Novus's trade secrets has unjustly enriched Texana in an amount to be determined at trial.

**RESPONSE:** Defendants deny the allegations contained in Paragraph 112 of Plaintiff's Complaint.

113.    In the alternative, Novus is entitled to a reasonable royalty for Texana's unauthorized disclosure or use of Novus's trade secrets.

**RESPONSE:** Defendants deny the allegations contained in Paragraph 113 of Plaintiff's Complaint.

114.    Texana's misappropriation was attended by circumstances of fraud, malice, and a willful and wanton disregard of Novus's right and feelings. Novus is entitled to exemplary damages as provided in C.R.S. § 7-74-104.

**RESPONSE:** Defendants deny the allegations contained in Paragraph 114 of Plaintiff's Complaint.

115.    Texana's misappropriation was willful and malicious. Novus is entitled to reasonable attorney fees as provided in C.R.S. § 7-74-105.

**RESPONSE:** Defendants deny the allegations contained in Paragraph 115 of Plaintiff's Complaint.

**COUNT SIX**
**Breach of Duty of Loyalty**
**(Against Sax and Collins)**

116.    Novus realleges and incorporates by reference each of the allegations above as if fully set forth herein.

**RESPONSE:** Defendants incorporate by reference and re-allege their responses to each of the allegations above as if fully set forth herein.

117.    Sax and Collins were managerial employees of Novus with significant responsibilities.

**RESPONSE:** Defendants admit the allegation that Sax and Collins were managerial employees of Novus. Defendants deny the remaining allegations contained in Paragraph 117 of Plaintiff's Complaint.

118.    While still employed by Novus, Sax and Collins solicited customers for Texana, solicited other Novus employees to terminate their employment, and took confidential, proprietary, trade secret information from Novus for Texana's benefit.

**RESPONSE:** Defendants deny the allegations contained in Paragraph 118 of Plaintiff's Complaint.

119.    By so doing, Sax and Collins breached their duties of loyalty to Novus.

**RESPONSE:** Defendants deny the allegations contained in Paragraph 119 of Plaintiff's Complaint.

120.    Sax and Collins' breaches of their duties of loyalty damaged Novus in an amount to be determined at trial.

**RESPONSE:** Defendants deny the allegations contained in Paragraph 120 of Plaintiff's Complaint.

## COUNT SEVEN
## Unjust Enrichment
## (Against Texana)

121.    Novus realleges and incorporates by reference each of the allegations above as if fully set forth herein.

**RESPONSE:** Defendants incorporate by reference and re-allege their responses to each of the allegations above as if fully set forth herein.

122.    Texana has received multiple benefits at Novus's expense. Novus invested in building its Denver branch, only to have Defendants orchestrate the move from Novus to Texana so that Texana, not Novus, benefits from those investments.

**RESPONSE:** Defendants deny the allegations contained in Paragraph 122 of Plaintiff's Complaint.

123.    For example, Novus invested significant resources in recruiting the Former Employees. But by soliciting Sax and Collins to solicit them to leave Novus en masse, Texana obtained the benefit of Novus's recruiting investments. In particular, as alleged above, Novus paid a recruiter with respect to one Former Employee who never performed any work for Novus's benefit and immediately began working on Texana's behalf.

**RESPONSE:** Defendants deny the allegations contained in Paragraph 123 of Plaintiff's Complaint.

124.    Novus provided Sax, Collins, and the other Former Employees with office space, laptops and other devices, email accounts, marketing tools, and other resources. But they used these resources for Texana's benefit. Texana was unjustly enriched by the use of these Novus resources for Texana's benefit.

**RESPONSE:** Defendants admit that Sax, Collins, and the Former Employees were provided with certain resources during their employment with Novus. Defendants deny the remaining allegations contained in Paragraph 124 of Plaintiff's Complaint.

125.     Novus also invested significant resources in training the Former Employees and helping them build referral networks. Defendants' improper efforts to solicit the Former Employees have resulted in Texana obtaining the benefits of Novus's training investments.

 **RESPONSE:** Defendants deny the allegations contained in Paragraph 125 of Plaintiff's Complaint.

126.     Novus invested significant resources in acquiring confidential and trade secret information that Texana has wrongfully obtained. That confidential information and trade secrets provides a benefit to Texana at Novus's expense.

**RESPONSE:** Defendants deny the allegations contained in Paragraph 126 of Plaintiff's Complaint.

127.     Novus invested in its loan "pipeline" which was stolen by Defendants for Texana's benefit. Texana has now been enriched by originating those loans, at Novus's expense.

**RESPONSE:**  Defendants deny the allegations contained in Paragraph 127 of Plaintiff's Complaint.

128.     It would be unjust for Texana to retain these benefits. As alleged throughout this complaint, Texana obtained these benefits through violation of federal and state trade secrets laws, breaches of contracts, and torts.

**RESPONSE:** Defendants deny the allegations contained in Paragraph 128 of Plaintiff's Complaint.

129.    Texana has been unjustly enriched at Novus's expense in an amount to be determined at trial.

**RESPONSE:** Defendants deny the allegations contained in Paragraph 129 of Plaintiff's Complaint.

## COUNT EIGHT
### Civil Conspiracy
**(Against all Defendants)**

130.    Novus realleges and incorporates by reference each of the allegations above as if fully set forth herein.

**RESPONSE:** Defendants incorporate by reference and re-allege their responses to each of the allegations above as if fully set forth herein.

131.    Defendants had a meeting of the minds on an object or course of action to (1) solicit the Former Employees to leave Novus and join Texana, (2) to improperly obtain confidential and trade secret information from Novus and to use other Novus resources for Texana's benefit, and (3) to wrongfully take business from Novus for Texana's benefit.

**RESPONSE:** Defendants deny the allegations contained in Paragraph 131 of Plaintiff's Complaint.

132.    Defendants took one or more unlawful overt acts to accomplish this object or course of action. As alleged throughout this complaint, Defendants achieved these ends through breaches of contract and tortious activity.

**RESPONSE:** Defendants deny the allegations contained in Paragraph 132 of Plaintiff's Complaint.

133.    Novus has suffered damages as the proximate result of Defendants' actions in an amount to be determined at trial.

**RESPONSE:** Defendants deny the allegations contained in Paragraph 133 of Plaintiff's Complaint.

**COUNT NINE**
**Aiding and Abetting Tortious Conduct**
**(Against all Defendants)**

134.    Novus realleges and incorporates by reference each of the allegations above as if fully set forth herein.

**RESPONSE:** Defendants incorporate by reference and re-allege their responses to each of the allegations above as if fully set forth herein.

135.    As alleged above, Defendants are each liable for torts in connection with their scheme to wrongfully steal Novus's business, confidential information, and trade secrets and deliver them to Novus.

**RESPONSE:** Defendants deny the allegations contained in Paragraph 135 of Plaintiff's Complaint.

136.    Each Defendant knowingly participated in each of the other Defendants' breaches and violations. Each Defendant was generally aware of its or his role as part of an overall illegal or tortious activity, and each Defendant knowingly and substantially assisted the others' principal violations.

**RESPONSE:** Defendants deny the allegations contained in Paragraph 136 of Plaintiff's Complaint.

137.    Each Defendant is therefore liable for aiding and abetting the torts of each other Defendant.

**RESPONSE:** Defendants deny the allegations contained in Paragraph 137 of Plaintiff's Complaint.

***

To the extent that any response is required to the "PRAYER FOR RELIEF" sections of Plaintiff's Complaint, then Defendants deny all allegations and specifically deny that Plaintiff is entitled to any relief whatsoever.

### GENERAL DENIAL

Any and all other allegations, claims, and prayers contained in Plaintiff's Complaint that have not been specifically admitted or denied are hereby denied in their entirety.

### SEPARATE DEFENSES

### FIRST DEFENSE

The Complaint is barred to the extent that it fails to state a claim upon which relief may be granted.

### SECOND DEFENSE

Plaintiff's claims are barred in whole or in part to the extent Plaintiff has failed to mitigate fully its alleged damages.

### THIRD DEFENSE

Plaintiff's claims are barred to the extent they involve transactions or events, or seek damages for periods, outside applicable limitations periods.

### FOURTH DEFENSE

Plaintiff's claims may be barred in whole or in part by laches, unclean hands, accord and satisfaction, estoppel, consent, ratification, and/or waiver.

## FIFTH DEFENSE

Plaintiff would be unjustly enriched by any recovery.

## SIXTH DEFENSE

Plaintiff's claims are barred in whole or in part because none of the alleged acts or omissions of Defendants were the proximate cause of injuries allegedly sustained by Plaintiff.

## SEVENTH DEFENSE

Plaintiff's damages are barred to the extent that Plaintiff, in the exercise of ordinary care, could have avoided the consequence of any alleged conduct.

## EIGHTH DEFENSE

Any award of punitive damages in this case would violate the due process and equal protection guarantees, and other substantive and procedural safeguards afforded under the United States Constitution.

## NINTH DEFENSE

Plaintiff is barred from pursuing claims for punitive damages because the alleged acts and omissions, if any, of Defendants fail to rise to the level required to sustain an award of punitive damages, do not evidence a malicious or reckless intent to deny Plaintiff its protected rights, and do not approach wanton or willful conduct to support an award of such damages. Plaintiff has failed to state a claim for punitive damages under any law.

## TENTH DEFENSE

Plaintiff's claims are barred because they contravene public policy.

## ELEVENTH DEFENSE

Plaintiff's tort claims are barred in whole by the economic loss rule.

## TWELFTH DEFENSE

Plaintiff's claims for attorney's fees and expenses are barred in that Defendants have not acted in bad faith, have not been stubbornly litigious, and have not caused Plaintiff unnecessary trouble or expense in any transaction underlying Plaintiff's lawsuit.

## THIRTEENTH DEFENSE

Plaintiff's claims are barred because they have not suffered the damages complained of in the Complaint.

## FOURTEENTH DEFENSE

Plaintiff's claims relating to allegations that Defendants breached a duty owed to Plaintiff fails because Defendants breached no duties owed to Plaintiff and, in fact, did not owe any duties to Plaintiff.

## FIFTEENTH DEFENSE

Plaintiff's claims for tortious interference fail because Plaintiff has no valid contract upon which these claims are based.

## SIXTEENTH DEFENSE

Plaintiff's breach of contract claims fail as they are based on contractual provisions that are unenforceable under applicable Colorado law.

## SEVENTEENTH DEFENSE

Plaintiff's breach of contract claims fails because Plaintiff lacks a legitimate interest to support the covenants at issue.

### EIGHTEENTH DEFENSE

Plaintiff's claim for tortious interference fail because Defendants acted within their competitive privileges.

### NINETEENTH DEFENSE

Plaintiff's claims for breach of contract and tortious interference with contract fail due to the doctrine of material breach.

### TWENTIETH DEFENSE

Plaintiff's aiding and abetting claims fail because they have failed to state a claim as to any underlying tort or unlawful act, and Defendants have not engaged in any conduct to support any underlying tort or unlawful act.

### TWENTY-FIRST DEFENSE

Plaintiff's trade secret claims are barred because some or all of the alleged trade secret information is readily ascertainable by proper means.

### TWENTY-SECOND DEFENSE

Plaintiff's trade secret claims are barred because some or all of the alleged trade secret information lacks independent economic value.

### TWENTY-THIRD DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrines of set-off and/or recoupment. To the extent Plaintiff is entitled to any recovery (which it is not), Defendants are entitled to set-off the monies due and owing to Sax and Collins against any damages that Plaintiff is entitled to recover.

**TWENTY-FOURTH DEFENSE**

Plaintiff's claims are barred, in whole or in part, by the doctrine of equitable estoppel.

**TWENTY-FIFTH DEFENSE**

Plaintiff's claims are barred, in whole or in part, by the fact that Plaintiff engaged in fraud to induce Sax and Collins to enter into the contracts at issue and then engaged in further acts of fraud throughout their employment.

**TWENTY-SIXTH DEFENSE**

Defendants expressly reserve the right to amend their Answer to respond further and to assert additional defenses as may be revealed during the course of litigation.

\*\*\*

WHEREFORE, Defendants, having fully answered the Complaint and having asserted their defenses thereto, respectfully request that the Court deny all relief requested in the Complaint, enter judgment in Defendants' favor, and grant Defendants such other relief as may be deemed just and appropriate.

**DEFENDANTS SCOTT SAX AND MICHAEL COLLINS'
COUNTERCLAIMS AGAINST PLAINTIFF**

Counterclaim Plaintiffs Scott Sax ("**Sax**") and Michael Collins ("**Collins**"), by and through undersigned counsel, state as follows in their Counterclaims against Ixonia Bank, d/b/a Novus Home Mortgage ("**Novus**") and Eric Egenhoefer ("**Egenhoefer**") (collectively, "**Counterclaim Defendants**").

## **INTRODUCTION**

1. Why is it hard for some business owners to adhere to standards of ethics and good faith practices? Given their refusal to honor contracts, their practice of denying to their employees their promised compensation, and their fraudulent scheme to lure executives into one-sided employment arrangements through false promises, Novus need only look internally to answer their own question.

2. Novus, through its President and CEO Eric Egenhoefer, recruited Sax and Collins in May 2024 via a laundry list of guarantees that it never intended to honor. As executives who oversaw a mortgage team, Sax and Collins were primarily compensated based on the total revenue derived from the originations of their loan officers. However, Novus (at Egenhoefer's direction and behest) began to systemically raise the amounts it would take from Sax and Collins despite the contractual terms the parties had previously negotiated. This left Sax and Collins with an impossible dilemma—either raise prices on their loans and lose competitive standing in the marketplace or earn significantly less thanks to Novus's blatant disregard for their promises.

3. In order to further deprive Sax and Collins of their rightful compensation based on their team's production, Novus withheld real-time financial reports from Sax and Collins and only provided such reports at a much later date, which is highly irregular in the industry. Upon review, these reports were consistently replete with errors that favored Novus at Sax and Collins' expense. When Sax and Collins would report these errors to Novus, Novus would delay amending them to the greatest extent possible in a further attempt to hoard Sax and Collins's rightful compensation for themselves.

4.     Novus became even more brazen in its wrongdoing over the course of Sax and Collins's employment. Despite the fact that Sax and Collins were contractually entitled to a monthly $19,000 base payment, Novus National Sales Director Brian Jensen ("**Jensen**") stated that Novus and Egenhoefer "didn't care" about their obligations and, in November 2024, failed to provide Sax and Collins with their base payment. Finally, when Sax and Collins left Novus as a result of this unlawful conduct, Novus refused to pay them their earned wages and converted their property in violation of Colorado law.

5.     Despite their bad faith actions throughout the entirety of their employment relationship, Novus has now brought this meritless lawsuit against Sax and Collins. Upon information and belief, Novus likely intends to use this lawsuit as a scare tactic to discourage other business units from leaving the company in order to continue their fraudulent practice of exploiting their own employees.

**PARTIES AND JURISDICTION**

6.     Counterclaim Plaintiff Scott Sax is an individual who is a citizen of Colorado.

7.     Counterclaim Plaintiff Michael Collins is an individual who is a citizen of Colorado.

8.     Counterclaim Defendant Ixonia Bank, d/b/a Novus Home Mortgage is a bank chartered in the state of Wisconsin with its principal place of business located in Wisconsin.

9.     Counterclaim Defendant Eric Egenhoefer is an individual who, upon information and belief, is a citizen of Wisconsin.

10.     This Court has supplemental jurisdiction over Sax and Collins's claims because they are compulsory counterclaims which form part of the same case or controversy as Novus's

claims under Article III of the United States Constitution pursuant to Fed. R. Civ. P. 13(a) and 28

U.S.C. § 1367(a).

**FACTS**

A.  **Sax and Collins Go to Work for Novus.**

11.    Sax and Collins are longtime members of the mortgage industry. Prior to their

employment with Novus, Sax and Collins served as Vice Presidents at the Bank of England from

October 2014 until their departure in early 2024.

12.    In May 2024, Sax and Collins engaged in discussions to join Novus in an executive

capacity as managers of a Novus branch in Denver, Colorado (the "**Branch**"). Sax and Collins

negotiated directly with Egenhoefer regarding the terms of their employment. In order to induce

Sax and Collins to join Novus, Egenhoefer made numerous promises to Sax and Collins that would

seemingly ensure favorable conditions for Sax, Collins, and their direct reports at Novus.

13.    Sax and Collins were attractive to Novus and Egenhoefer because their successful

track records in the industry and already-assembled team meant that Novus could essentially

acquire a highly-functioning loan business for no upfront cost and minimal ongoing cost. As a

result, Egenhoefer and Novus were aware that they needed to present Sax and Collins with

advantageous terms of employment in order to match the strength of the services that Sax, Collins,

and their team could offer Novus.

14.    During this recruitment process, Sax and Collins made clear that the most important

factor in the parties' arrangement was the "corporate margin" that Novus would take from loans

generated by Sax and Collins's team. This margin was critical to the success of the parties'

relationship because if Novus insisted upon receiving too large of a margin, then Sax and Collins

would either be forced to raise interest rates, making them uncompetitive in the marketplace, or receive lessened compensation for their work. As highly experienced executives, Sax and Collins were confident that if Novus offered an appropriate corporate margin, then Sax and Collins could expect to run the Branch at a profit and to the benefit of all parties based on their extended track record in the industry.

15.     In order to meet this requirement, Egenhoefer repeatedly made clear that Novus's corporate margin would equal 80 BPS on conventional loans and 100 BPS on government loans, in addition to fixed fees for costs such as underwriting. "BPS" refers to Basis Points, a unit of measurement for interest rates that equal 0.01%. While this was slightly higher than Sax and Collins desired, Egenhoefer assured Sax and Collins that Novus had not altered its margins since the inception of the company and that Sax and Collins could rely on the margin remaining at that amount.

16.     Novus made numerous additional promises to Sax and Collins. For example, in an email on May 8, 2024, Egenhoefer represented to Sax and Collins that Novus would only collect 50 BPS on all brokered loans generated by the Branch. (*See* Ex. A.) Egenhoefer also guaranteed that, upon dissolution of the relationship between the parties, Sax and Collins could "take [their] group back[,]" referring to the employees Sax and Collins intended to bring to Novus, who Egenhoefer promised would be carved out of any applicable non-solicitation agreement. (*Id.*) The parties agreed that Sax and Collins on the one hand and Novus on the other would each be entitled to keep "their marbles" if the arrangement was to end: Sax and Collins would retain their team, their client base, and referral contacts, while not retaining anything new they received from Novus. (*Id.*)

17.    After reaching agreeable terms, Sax and Collins requested that Novus provide them with written agreements detailing the parties' arrangement. However, Egenhoefer repeatedly delayed in providing Sax and Collins with such contracts, and drafts of the agreements were consistently inaccurate with respect to the terms to which the parties had agreed.

18.    Several months after Sax and Collins commenced work for Novus in May 2024, each signed a Non-Producing Branch Manager Employment Agreement ("**Employment Agreement**") and a Non-Producing Branch Manager Compensation Addendum ("**Compensation Addendum**") (collectively, "**Agreements**"). While the Agreements were not actually executed by Sax and Collins until much later, they contain an effective date of May 15, 2024 at the insistence of Egenhoefer. (*See* Ex. B; Ex. C; Ex. D.)

19.    At this point in time, Novus already had access to the entirety of the loans and client database possessed by Sax, Collins, and their team, so Sax and Collins felt coerced into executing and backdating the Agreements without attorney review due to the pressure imposed by Egenhoefer and Jensen.

20.    The Branch was almost entirely staffed by Sax and Collins, not Novus.  Of the 24 employees at the Branch, only four had not previously worked with Sax and Collins and Novus was not responsible for hiring any of the remaining four.[1] As Executive Western Regional Managers, Sax and Collins were responsible for managing the Branch and ensuring that its loan officers (known as "producers") maximized revenue through loan originations.

---

[1] Although Egenhoefer promised to recruit additional staff for the Branch, Novus was not able to hire experienced loan officers because potential candidates familiar with the industry refused to subject themselves to the extraordinarily high corporate margin that Novus imposed on the Branch after violating its promises to Sax and Collins.

21.     Commensurate with these duties, the Employment Agreement and Compensation Addendum provided that Sax and Collins would be compensated based on the Branch's profits. The Employment Agreement contains a Cover Sheet that acknowledged that Sax and Collins would "receive monthly payout of branch profits[,]" which were to be split evenly between Sax and Collins, subject to profitability and reserve requirements. (Ex. B, p. 1.) However, the Cover Sheet also explicitly stated:

> You will receive a monthly draw of $19,000. This will be paid out on the payroll following the prior month's financials and will be recoverable through the P&L. This draw cannot cause a loss of profitability for the branch beyond 6 months after your hire, **beginning December 1, 2024.**

(Ex. B, p. 1) (emphasis added).

22.     In other words, prior to December 2024, Sax and Collins's right to a $19,000 monthly payment was unconditional.

23.     The Compensation Addendum, executed contemporaneously with the Employment Agreement, specifically details the additional compensation that Novus promised Sax and Collins. Sax and Collins were also entitled to a guaranteed annual salary of $55,000 (Ex. C, § 1(a)), in addition to a "Branch Net Income" payment, defined as:

> I.  Revenue derived from the originations of the Branch; less II. Any amounts previously paid to Employee for the Guaranteed Salary not already taken into account by a prior calculation, less III. Any amounts allocated by Company as "Branch Expenses" as defined in this Addendum, less IV. The Branch Reserve, which is equal to $10,000, less V. The Loan Loss Reserve, which is equal to 5 BPS per Loan. (Loan Loss Reserves are Company Funds and are not included in any Branch Net Income paid to Employee).

(Ex. C, § 1(b)).

24.     In simple terms, Sax and Collins were entitled to the profits of the Branch after all expenses were paid and Novus received its set percentage of the Branch's revenue. Based on their

extended histories in the mortgage industry, Sax and Collins determined that they could expect to

earn between $300,000-$1,500,000 a year based on the corporate margin that the Counterclaim

Defendants had represented during negotiations, depending on market factors.

25.    The Compensation Addendum also restates the Compensation Terms included in

the Cover Sheet. (*Id.*, § 1.)

26.    Section 17(n) of the Employment Agreement contains a merger clause that states

as follows:

> The parties intend that this Agreement, the exhibits thereto, and incorporated
> documents (including the operative Comp Agreement) . . . control any other
> agreements, express or implied, oral or written, regarding this subject matter, except
> as set forth therein . . . The Company reserves the right to modify, alter, or amend
> any provision of this agreement upon written notice to the Employee. **Such
> modifications regarding the terms of this agreement will not be considered
> valid unless they are in writing and executed by Employee** and an authorized
> representative of the Company, unless otherwise set forth in those documents.

(Ex. B, § 17(n)).

27.    At no time did either Sax or Collins agree in writing to alter the terms of the

Employment Agreement or the Compensation Agreement.

28.    Finally, the Employment Agreement provides that it will be governed by the laws

of the state in which the employee is primarily employed by Novus, which in this case is Colorado.

(See *id.*, § 17(m)).

**B.    Novus Repeatedly Breaches Its Obligations.**

29.    Unbeknownst to Sax and Collins at the time, Novus had absolutely no intention of

honoring its contractual promises to either individual.

30.     At the outset, Egenhoefer insisted that Sax and Collins begin to transition their loans and client leads to Novus prior to the start of their employment and before Sax and Collins had signed written contracts with Novus.

31.     Despite the terms negotiated by the parties, as well as the plain language of the Compensation Agreement, Novus began to increase the amount it would take from the Branch's loan originations by increasing its corporate margin. Soon after the commencement of Sax and Collins's employment, Novus reneged on its initially agreed to a share of 80 BPS on conventional loans and 100 BPS on government loans originated by the Brach and instead doubled its corporate margin in flagrant violation of its repeated promises. This meant that Sax and Collins were compensated significantly less than they expected (and owed) based on Novus's misrepresentations. However, at least one Novus executive stated that this was standard practice at Novus and informed Sax and Collins that it was known as "feathering up" margins at the commencement of employment. This sharp increase in corporate margin meant that Sax and Collins could not make a profit on their loans without raising interest rates, which cratered their ability to compete in the marketplace.[2]

32.     As a result of Novus's actions, numerous brokers with whom Sax and Collins had done business for years moved their loans elsewhere.  The brokers cited the non-competitive pricing that Sax and Collins were forced to charge.  As a result of Counterclaim Defendants' actions, Sax and Collins missed out on substantial compensation and also saw their reputations diminished in the eyes of long-term referral sources.

---

[2] Loan officers (which Sax and Collins are not) are subject to fixed rates of compensation by federal law; thus, Novus's increased corporate margin came directly at the expense of Sax and Collins.

33.     When Sax and Collins were forced to focus on brokered loans as a result of Novus's conduct rendering the Branch uncompetitive in other segments of the market, Novus unilaterally raised its 50 BPS share of all brokered loan revenue to 75 BPS in December 2024 despite the fact that the Regional Manager Addendum Novus executed with Sax explicitly stated that "[c]orporate will be entitled to a 50 BPS fee vs. our standard 75 BPS on all broker business." (Ex. E, ¶ 3(1).)

34.     While Novus lined its pockets with its dramatically increased margins, Sax and Collins lost significant compensation in addition to key relationships with their own team and outside referrals, who had come to trust Sax and Collins's loan pricing and business structure. During this time, Egenhoefer and Jensen repeatedly encouraged Sax and Collins to terminate the Branch's operations staff and allow Novus's corporate team to handle those functions in an effort to steal Sax and Collins's pipeline, clients, and loan officers.

35.     Novus's wrongdoing extended far beyond its scheme of raising its BPS amounts. During Sax and Collins's employment, Novus quadrupled its reserve minimums, which meant that Sax and Collins were not paid a Branch Net Income payment until there was up to $100,000 in reserve. There was no good faith justification to take this action other than to enrich Novus at the direct expense of Sax and Collins.

36.     When Sax and Collins brought their concerns about Novus's pricing changes to Novus management, Egenhoefer and Jensen instructed Sax and Collins to tamper with the compensation of the Branch's loan officers in violation of the Truth in Lending Act and other federal law.

37.    In addition to these numerous schemes to unjustly enrich Novus through changes to Sax and Collins's compensation formula, Novus also attempted to withhold critical financial information from Sax and Collins in order to fraudulently underpay them.

38.    It is standard practice for banks to provide their executives with real-time profit and loss information when such information impacts an executive's compensation. However, Novus refused to allow Sax and Collins to view the Branch's profit and loss statements until much later, with the reports Sax and Collins received often outdated by a month or longer. Upon review, Sax and Collins discovered numerous errors in the statements that consistently favored Novus and resulted in reduced compensation to Sax and Collins. When Sax and Collins reported these mistakes, Novus would delay rectifying the errors in order to avoid paying Sax and Collins for as long as possible.

39.    When Sax and Collins protested Novus's wrongdoing, particularly its egregious violations of the Agreements, Jensen explicitly informed Sax and Collins in October 2024 that Novus did not care about the Agreements.

40.    Finally, seemingly unsatisfied with their numerous attempts to sap Sax and Collins of their due compensation in order to enrich themselves, Novus refused to pay Sax and Collins their $19,000 monthly draw in November 2024 in blatant violation of the Employment Agreement and Compensation Addendum.

41.    To date, Novus has not paid Sax or Collins the $19,000 that remains outstanding from their November monthly draw.

42.    All told, Novus's persistent attempts to shirk their contractual obligations and their fraudulent concealment of accurate financial reports cost Sax and Collins significant compensation

in an amount still undetermined. Additionally, Novus's blatant failure to comply with their obligations under the Employment Agreement and Compensation Addendum constitutes a material breach of both contracts which entitles Sax and Collins to monetary damages and to terminate the Agreements.

43.     Sax and Collins have learned that Novus has engaged in similar behaviors with other groups that it has recruited, namely by changing BPS numbers, engaging in false accounting, altering payment terms, and other forms of dishonest behavior.  Based on this pattern and practice, Sax and Collins have concluded that Novus never intended to honor its promises to them. Instead, it made these promises as part of a scheme to induce them to move their team to Novus, force Sax and Collins out, and retain the most valuable members of the team after a trial by fire.

## C. **Sax and Collins Leave Novus, Who Withholds Their Pay and Converts Their Property.**

44.     Understandably frustrated with Novus's repeated unlawful actions and its placement of Sax and Collins in untenable positions with the realtors with whom they have been doing business for years, Sax and Collins decided to resign from their positions with Novus in January 2025, with their team choosing to join them based on their long relationships that predated their work for Novus.[3] Sax and Collins first communicated this via phone call to Jensen, who apologized for any action Novus had taken to force Sax and Collins to leave. After Sax confirmed this decision in an email to Egenhoefer and Jensen, Jensen stated that he and Egenhoefer would "do all that we can do assist you in this transition." (Ex. F.) As a show of good faith, Sax and Collins agreed to adopt the lease for the Branch's office space, even though they did not actually

---

[3] Egenhoefer explicitly promised that Sax and Collins could "take their group back" at the end of employment. (Ex. A.)

want it. However, upon learning of their resignations, Egenhoefer became incensed, locked Sax and Collins out of the Branch's office, and made numerous impossible demands to Sax and Collins.

45.    As a result of Egenhoefer's refusal to allow Sax and Collins access to their own office space, Novus has retained numerous items of Sax and Collins's personal property, which it refuses to return.  Specifically, Novus has retained the following property that belongs to Sax and Collins:

- 15 laptops;

- Approximately 30 monitors;

- At least one printer;

- Miscellaneous IT equipment (routers, switches, etc.);

- Furniture (ping pong tables, a kegerator, a bar, office furniture and chairs, plants, potters, etc.);

- Three televisions;

- Kitchen supplies;

- A microwave;

- A coffee machine; and

- Various office supplies.

46.    Novus has also retained a toll-free phone number that Sax and Collins have been using for two decades.

47.    Egenhoefer's fury upon learning of Sax and Collins's resignation evidences the goal of his and Novus's fraudulent scheme: Novus intended to lure Sax and Collins through false representations before manipulating their margins to render Sax and Collins uncompetitive in the

industry, at which time Novus could fire Sax and Collins for cause while retaining the valuable assets they brought to Novus, such as their team, loan pipeline, and leads.

48.     In what amounts to a final attempt to withhold Sax and Collins's owed compensation, Novus refused to pay Sax or Collins their unused paid time off ("**PTO**") at separation, in clear violation of the Colorado Wage Act, C.R.S. § 8-4-101.

49.     Sax and Collins have been significantly injured in numerous ways as a result of Novus's consistent unethical and bad faith conduct: they have lost untold amounts of Branch Net Income compensation thanks to Novus's unlawful manipulation of its corporate margin, reserve amounts, and financial reports; they are owed $19,000 in unmade monthly draw payments from November 2024; and they have not been issued a payout of their unused PTO as required by Colorado law. Novus has willfully withheld these due wages from Sax and Collins, despite written demand, which entitles Sax and Collins to treble damages and their reasonable attorneys' fees.

50.     Finally, Sax and Collins have suffered further injury as a result of Novus's fraudulent misrepresentations regarding the terms of their employment, which Sax and Collins relied on in accepting Novus's offer of employment: due to Novus's deceptions Sax and Collins lost numerous loan opportunities and harmed their reputation with their referral sources. Specifically, Sax and Collins have been informed by multiple realtors that they were forced to stop using Sax and Collins's services as a direct result of the rates Sax and Collins were required to charge due to Novus's deception.

<u>**COUNT I**</u>
**Violation of Colorado Wage Act, C.R.S. § 8-4-101 et seq.**
**(All Counterclaim Defendants)**

51.    Sax and Collins incorporate the foregoing paragraphs as by reference as if fully set forth herein.

52.    Sax and Collins are owed wages and compensation in the form of the full amount of their November 2024 monthly draw, their full Branch Net Income payments, and a payout of their accrued but unused PTO at the time of the end of their employment with Novus.

53.    Egenhoefer, as the CEO of Novus, was Sax and Collins's "employer" pursuant to C.R.S. 8-4-101(6).

54.    The total amount of unpaid wages related to Sax and Collins's November monthly draw is $19,000 per individual. Novus is able to readily determine the amount of Sax and Collins's unused PTO but has failed to provide Sax and Collins with their personnel files to identify the amount they are owed. The full extent of their owed wages and compensation from Novus with respect to the Branch Net Income payments is still to be determined.

55.    As described herein, Egenhoefer used Novus to perpetuate a fraud in inducing Sax and Collins to work for Novus under false pretenses in an effort to steal Sax and Collins's valuable industry assets such that he is personally liable for such unpaid wages.

56.    Sax and Collins have demanded payment of their fully earned wages from Novus and Egenhoefer. To date, Novus and Egenhoefer have failed to make any such payment of Sax and Collins's earned, vested, and determinable wages.

57.    Novus has willfully, knowingly, and recklessly disregarded C.R.S. § 8-4-101 *et seq.* Novus has no good faith justification for withhold such wages from Sax or Collins.

58.     Sax and Collins are entitled to payment of their earned, vested, and determinable wages and compensation subject to an automatic penalty of three times the amount of unpaid wages due pursuant to C.R.S. § 8-4-109.

59.     In the alternative, Sax and Collins are entitled to payment of their earned, vested, and determinable wages and compensation subject to an automatic penalty of two times the amount of unpaid wages due pursuant to C.R.S. § 8-4-109.

## COUNT II
### Breach of Contract
### (Counterclaim Defendant Novus)

60.     Sax and Collins incorporate the foregoing paragraphs as if fully set forth herein.

61.     The parties entered into the Employment Agreement and Commission Addendum on May 15, 2024. Both contracts are valid and enforceable.

62.     Pursuant to the Cover Sheet of the Employment Agreement and § 1 of the Commission Addendum, Sax and Collins were each entitled to a monthly draw in the amount of $19,000. This monthly draw was unconditional prior to December 1, 2024.

63.     Novus failed to pay Sax and Collins the full value of their monthly draws in November 2024.

64.     § 1 of the Commission Addendum entitled Sax and Collins to split the Branch's Net Income subject to certain subtractions, including a Branch Reserve of $10,000 and a Loan Loss Reserve of 5 BPS per loan.

65.     Novus breached the terms of the Commission Addendum by raising the Branch Reserve and the Loan Loss Reserve, resulting in Sax and Collins receiving Branch Net Income

payments that were significantly lower than Novus was obligated to pay under the terms of the Commission Addendum.

66.     Novus's flagrant violations of the Employment Agreement and Commission Addendum constitutes a material breach of both contracts between the parties.

67.     Sax and Collins have been damaged in excess of $19,000 each, with the full amount to be determined at trial.

<u>COUNT III</u>
**Fraudulent Inducement**
**(All Counterclaim Defendants)**

68.     Sax and Collins incorporate the foregoing paragraphs as if fully set forth herein.

69.     Prior to Sax and Collins's employment with Novus, Sax and Collins engaged in extensive negotiation with Novus management, particularly Novus President and CEO Eric Egenhoefer.

70.     Egenhoefer made numerous representations regarding the terms and conditions of Sax and Collins's employment at Novus, including promises regarding reserve amounts and the BPS Novus would take from each loan originated by Sax and Collins's Branch.

71.     Novus and Egenhoefer had no intention of honoring these promises, which were material misrepresentations calculated to induce Sax and Collins to accept employment at Novus. At all times, Novus and Egenhoefer were aware that they were concealing their intent to alter the terms of employment that it had assured Sax and Collins they would be subject to in order to destroy Sax and Collins's competitive standing in the marketplace. Novus and Egenhoefer pursued this goal in order to remove Sax and Collins from the Branch in order to claim the Branch's highly valuable assets (such as its loan officers, loan pipeline, and referral contacts) for themselves.

72.     The fact that Novus and Egenhoefer have engaged in similar behavior with other business units that they have lured to Novus indicates that its dishonest business dealings are part of a pattern and practice, fully thought-out in advance and executed as a plan.

73.     As parties to a potential business transaction, Novus and Egenhoefer had a duty to disclose if it they had stated facts that it knew would create a false impression unless other facts were disclosed.

74.     Novus and Egenhoefer's true intentions regarding the terms and conditions of Sax and Collins's employment and compensation with Novus were facts that in equity and good conscience should have been disclosed under Colorado law.

75.     Sax and Collins justifiably relied on Novus and Egenhoefer's material misrepresentations in deciding to accept employment with Novus.

76.     Sax and Collins have been injured as a result of Novus and Egenhoefer's fraud. Sax and Collins are experienced, high-level mortgage executives who possess incredibly desirable skills and assets. Based on their extended track records in the industry, Sax and Collins had a reasonable expectation that they would earn between $300,000-$1,500,000 on an annual basis had Novus and Egenhoefer fulfilled their false promises. If not for Counterclaim Defendants' misconduct, Sax and Collins could have earned this amount for Novus, or, alternatively, gained employment with a business that appropriately compensated Sax and Collins for their services in the amount above and honored the terms of their agreements.

77.     Instead, Sax and Collins joined Novus in reliance on Novus's deceit, which caused significant losses compared to their reasonable expectations based on Novus's false promises in a

full amount to be determined at trial, in addition to damages to their reputation, business goodwill, and customer relationships.

78.     Sax and Collins are entitled to exemplary damages because the injury complained of is attended by circumstances of fraud, malice, and willful and wanton conduct pursuant to C.R.S. § 13-21-102.

**COUNT IV**
**Conversion**
**(Counterclaim Defendant Novus)**

79.     Sax and Collins incorporate the foregoing paragraphs as if fully set forth herein.

80.     After the end of their employment with Novus, a large amount of Sax and Collins's personal property remained in the Branch's office space.

81.     Novus has denied Sax and Collins access to the Branch to retrieve their property and has failed to return any of Sax and Collins's property to them.

82.     In preventing Sax and Collins from accessing their rightful property, Novus has committed an unauthorized act of dominion or ownership over Sax and Collins's property in violation of Colorado law.

83.     Sax and Collins are entitled to the value of their converted property in monetary damages.

84.     Novus's conversion of Sax and Collins's property was done maliciously, willfully, and wantonly such that Sax and Collins are also entitled to exemplary damages pursuant to C.R.S. § 13-21-102.

**COUNT V**
**Civil Theft**
**(Counterclaim Defendant Novus)**

85.     Sax and Collins incorporate the foregoing paragraphs as if fully set forth herein.

86.     Novus has knowingly retained and exercised control over Sax and Collins's property of value without authorization.

87.     Novus has refused to return such property upon request, which indicates that Novus intends to deprive Sax and Collins permanently of the use and/or benefit of the property of value.

88.     As a direct and proximate result of Novus's civil theft, Sax and Collins have suffered damages in an amount to be proven at trial.

89.     Pursuant to C.R.S. § 18-4-405, Sax and Collins are also entitled to treble damages equal to three times the amount of actual damages, as well as an award of costs and attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, based on the foregoing, Counterclaim Plaintiffs Steve Sax and Michael Collins respectfully request this Court grant the following relief:

(a) An award of money damages for Counterclaim Defendants' wrongful acts as alleged herein, including, but not limited to actual damages, pre-litigation attorneys' fees and costs, and Counterclaim Defendants' unjust enrichment as a result of their unlawful acts;

(b) Treble damages for Counterclaim Defendants' knowing and willful violations of C.R.S. § 8-4-101 *et seq.*, or, in the alternative, automatic double damages as authorized by C.R.S. § 8-4-109;

(c) Treble damages for Novus's civil theft, pursuant to C.R.S. § 18-4-405;

(d) An award of exemplary damages for Counterclaim Defendants' malicious, willful, and wanton fraudulent inducement;

(e) An award of exemplary damages for Novus's malicious, willful, and wanton conversion;

(f) The fair market value of the property Novus has converted;

(g) An award of costs and attorneys' fees; and

(h) An award of such other relief that the honorable Court may deem just and proper.

Respectfully submitted,

*/s/Michael P. Elkon*
Michael P. Elkon
Georgia Bar No. 243355
Matthew T. Sharon
Georgia Bar No. 723611
**FISHER PHILLIPS LLP**
1230 Peachtree Street NE, Suite 3300
Atlanta, GA 30309
(404) 231-1400 (T)
(404) 240-4249 (F)
melkon@fisherphillips.com
msharon@fisherphillips.com

Brett M. Wendt
Colorado Bar No. 30152
**FISHER PHILLIPS LLP**
1125 17th Street
Suite 2400
Denver, Colorado 80202
Phone (303) 218-3650
Facsimile (303) 218-3651
bwendt@fisherphillips.com

*Attorneys for Defendants/Counterclaim Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

| | | |
|---|---|---|
| IXONIA BANK d/b/a NOVUS HOME MORTGAGE, | ) ) | |
| | ) | CIVIL ACTION FILE NO. |
| *Plaintiff,* | ) ) | |
| | ) | 1:25-cv-00516 |
| v. | ) ) | |
| TEXANA BANK NA, SCOTT SAX, and MICHAEL COLLINS, | ) ) ) | **JURY TRIAL DEMANDED** |
| *Defendants* | ) ) | |
| SCOTT SAX and MICHAEL COLLINS, | ) ) | |
| *Counterclaim Plaintiffs,* | ) ) ) | |
| v. | ) ) | |
| IXONIA BANK d/b/a NOVUS HOME MORTGAGE and ERIC EGENHOEFER, | ) ) ) ) | |
| *Counterclaim Defendants* | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on March 28, 2025, I electronically filed ***DEFENDANTS' ANSWER AND SEPARATE DEFENSES TO PLAINTIFF'S COMPLAINT AND COUNTERCLAIMS*** using the Court's electronic filing system, which will automatically send email notification of such filing to the following attorney(s) of record:

| | |
|---|---|
| Ryan M. Sugden | Janel M. Dressen |
| STINSON LLP | Joseph R. Richie |
| 1144 Fifteenth Street | ANTHONY OSTLUND LOUWAGIE |
| Suite 2400 | DRESSEN & BOYLAN P.A. |
| Denver, CO 80202 | 90 South Seventh Street |
| Tel. (303) 376-8405 | 3600 Wells Fargo Center |
| Email: ryan.sugden@stinson.com | Minneapolis, MN 55402 |
| | Tel. 612.349.6969 |
| | Emails: jdressen@anthonyostlund.com |
| | jrichie@anthonyostlund.com |

*Counsel for Plaintiff/Counterclaim Defendants*

/s/Michael P. Elkon
Michael P. Elkon
Georgia Bar No. 243355